# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RANSOM PARRIS,**

    **Plaintiff,**

v.                                                                       **Civil Action No. 1:08cv86**
                                                                       **(Judge Keeley)**

**KATHY PRATT, DON SPRINGSTON,**
**KAREN STEWART, WILLIAM HALE**
**AND SHEILA RAMSEY**

    **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

On March 5, 2008, the plaintiff filed a civil rights complaint against the above-named defendants. On April 1, 2008, the plaintiff filed an Amended Complaint. On May 19, 2008, the plaintiff was granted permission to proceed as a pauper. This case is now before the Court on the plaintiff's Motion to Amend his Complaint in which the plaintiff seeks permission to add William Fox as an additional defendant.

## I. The Amended Complaint

In the Amended Complaint,[1] the plaintiff asserts that on February 7, 2008, he mailed a letter to the Editor of *The Charleston Gazette*. The plaintiff mailed the letter by handing it Kathy Pratt ("Pratt") in the mailroom of the St. Mary's Correctional Center ("SMCC"). In the letter, the plaintiff expressed his negative feelings regarding the West Virginia Division of Corrections ("DOC") plan

---

[1] An "amended pleading ordinarily supersedes the original and renders it of no legal effect." Young v. City of Mt. Ranier, 238 F.3d 567, 572 (4th Cir.2001) (quoting Crysen/Montenay Energy Co. v. Shell Oil Co., 226 F.3d 160, 162 (2nd Cir.2000)).

to prohibit the use or possession of tobacco products by its inmates. Because other inmates expressed similar views, the plaintiff allowed 33 other inmates to sign the letter as coauthors.

After handing his letter to Pratt, the plaintiff was given a certified mail receipt by Shelia Ramsey ("Ramsey"), a Supervisor at the SMCC mailroom. Ramsey also informed the plaintiff that his letter would not leave the facility until the next day. The plaintiff believes that his letter was intercepted by another mailroom worker, Karen Stewart ("Stewart"), and was then delivered to the Associate Warden of Operations, Don Springston ("Springston"). Springston then charged the plaintiff with three separate rule violations based on the contents of the letter. Specifically, the plaintiff was charged with (1) Obstructing an Employee/Visitor in violation of Rule 1.16; (2) Demonstrations in violation of Rule 1.12; and (3) Fraudulent Representations in violation of Rule 2.17. The plaintiff pleaded not guilty at his disciplinary hearing held before the Institutional Magistrate, William Hale ("Hale"). The plaintiff was found guilty of each infraction and sanctioned to 60 days punitive segregation, 90 days loss of privileges and transfer to a more secure facility.

In the amended complaint, the plaintiff asserts that none of his actions constituted a violation of any institutional rule or policy. Instead, the plaintiff asserts that his mail was improperly opened by staff. The plaintiff asserts that his conduct was not a threat to institutional order or security, but simply, an exercise of his right to free speech. The plaintiff asserts that each defendant, for his or her part in the above-described incident, is liable to him for violating his rights under the First Amendment. Specifically, the plaintiff alleges that Pratt, Ramsey and Stewart improperly handled his mail. In addition, the plaintiff asserts that Springston improperly read his mail and disciplined him for the contents. Finally, the plaintiff asserts that Hale violated his rights by punishing him for exercising his constitutional rights.

As relief, the plaintiff seeks monetary damages for his severe mental anguish, physical pain and suffering, and the aggravation of his pre-existing heart condition due to the great stress he was caused. The plaintiff further seeks damages for the loss of liberty and privileges that stemmed from his disciplinary sanctions and punishment for those responsible for violating his constitutional rights.

In the amended complaint, the plaintiff acknowledges that there is a grievance procedure at his institution of incarceration, but concedes that he has not raised his constitutional claims in that procedure. The plaintiff asserts that he did attempt to appeal his disciplinary action, but that he has thus far only initiated a claim at the institutional level. Further, the plaintiff appears to argue that claims regarding constitutional issues are never remedied in administrative grievance procedures and therefore, he should not be required to complete such procedures.

## II. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328.

Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[2] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

### III. Analysis

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 126 S.Ct. at 2387 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 2393.

---

[2] Id. at 327.

[3] Porter v. Nussle, 534 U.S. 516, 524 (2002).

In Jones v. Bock, 549 U.S. 199 (2007), the United States Supreme Court ruled, among other things, that an inmate's failure to exhaust under the PLRA is an affirmative defense, and an inmate is not required to specifically plead or demonstrate exhaustion in his complaint. However, that decision does not abrogate the fact that an action under 42 U.S.C. § 1983 is subject to exhaustion of administrative remedies as required by the PLRA. Nor does it abrogate well-established Fourth Circuit precedent which allows the Court to summarily dismiss a complaint in which the failure to exhaust is clearly evident. Anderson v. XYZ Correctional Health Services, 407 F.3d 674 (4th Cir. 2005).

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

Here, the plaintiff concedes in his amended complaint that he has not initiated any grievance procedure with regard to his claims that the defendants violated his First Amendment rights. In addition, the plaintiff concedes in his amended complaint that although he initiated the first level of the grievance procedure with regard to his disciplinary claims, that he had not completed any level of the process as of the date this case was filed. Instead, the plaintiff argues that he should not be required to exhaust his administrative remedies because it is unlikely that the process will garner him any relief.

Despite the fact that the Supreme Court has stated that it "will not read futility or other

<mark>5</mark>

exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where Plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms). To the extent, therefore, that exhaustion may be waived, the plaintiff has failed to set forth any accepted reason to excuse his failure to exhaust.

### IV. Recommendation

For the reasons set forth in this Opinion, the undersigned recommends that the plaintiff's Amended Complaint (dckt. 10) be **DISMISSED without prejudice** for the failure to exhaust, that his Motion to Amend (dckt. 21) be **DENIED as moot** and this case be **DISMISSED** from the active docket of this Court.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A

copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: September 18, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE